**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELVIN MEJIA, Individually and on behalf of All Others Similarly Situated,<br><br>　　　　　　　　　**Plaintiff,**<br><br>-against-<br><br>WILCOX DEVELOPMENT CORP., STOP & STOR NEW YORK'S SELF STORAGE LEADER LLC, NEIL SIMON, and JEFF HENICK, Jointly and Severally,<br><br>　　　　　　　　　**Defendants.** | **CLASS & COLLECTIVE<br>ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

　　　　Plaintiff Elvin Mejia ("Mejia" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

　　　　1.　　Plaintiff worked as a construction worker and laborer for Defendants' general contracting and storage facilities company. For his work, Defendants initially paid Plaintiff on a daily basis, then on an hourly basis, but never paid him overtime premium pay for hours worked over forty (40) in a given workweek.

1

2. Plaintiff brings this action to recover unpaid overtime wages owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*.

3. Plaintiff also brings this action to recover damages for Defendants' failure to provide proper wage statements and wage notices pursuant to the NYLL and supporting regulations.

4. Plaintiff brings his FLSA claim on behalf of himself and all other laborers, construction workers, and demolition workers of Defendants.

5. Plaintiff brings his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of laborers, construction workers, and demolition workers of Defendants in New York.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district and Defendants maintain business locations in this district.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

9. <u>Plaintiff Elvin Mejia</u> was, at all relevant times, an adult individual residing in Queens County, New York.

10. Throughout the relevant time period, Plaintiff worked for Defendants throughout the greater New York City area.

11. Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his consent form is attached hereto.

**Defendants:**

12. Defendant Wilcox Development Corp. ("Wilcox Development") is an active Domestic Limited Liability Company with its principal place of business at 651 Willowbrook Road, Suite 205, Staten Island, New York 10314.

13. Defendant Stop & Stor New York's Self Storage Leader LLC ("Stop & Stor" and together with Wilcox Development, the "Corporate Defendants") is an active Domestic Limited Liability Company with its principal place of business at 651 Willowbrook Road, Suite 203, Staten Island, New York 10314.

14. Upon information and belief, Defendant Neil Simon ("Simon") is an owner, operator and manager of the Corporate Defendants.

15. Upon information and belief, Defendant Jeff Henick ("Henick" and together with Simon, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") is an officer and manager of the Corporate Defendants.

16. The Individual Defendants sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, the

Individual Defendants were in charge of hiring and firing employees, setting schedules and wage rates, determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of Stop & Stor and Wilcox Development.

17. The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously in their direction and control of Plaintiff and the Corporate Defendants' other similarly situated employees, and are an "employer" pursuant to the FLSA, 29 U.S.C. § 203 (d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

18. The Corporate Defendants' operations are interrelated and unified.

19. Wilcox Development and Stop & Stor are joint employers of Plaintiff and the Collective Action Members/Class Members.

20. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21. Upon information and belief, at all relevant times, the Defendants had gross revenues in excess of $500,000.00.

22. At all relevant times, Defendants employed and/or continues to employ Plaintiff and each Collective Action Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, Defendants employed and/or continues to employ Plaintiff and each Class Member within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24. Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf and the following collective:

> All persons employed by Defendants at any time since July 20, 2014 and through the entry of judgment in this case (the "Collective Action Period") who worked for Defendants as construction workers, laborers, and demolition workers (the "Collective Action Members").

25. A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies including, but not limited to, failing to pay Plaintiff and similarly situated employees overtime premiums for all hours worked over forty (40) per workweek. As a result of this policy, Plaintiff and the Collective Action Members did not receive the legally required overtime premium payments for all hours worked in excess of forty (40) per week.

26. Plaintiff and the Collective Action Members had substantially similar job duties, work schedules, and were paid by Defendants pursuant to the same or substantially similar payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

27. Pursuant to the NYLL, Plaintiff brings his Second through Fourth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in New York at any time since July 20, 2011 and through the entry of judgment in this case (the "Class Period") who worked for Defendants as construction workers, laborers, and demolition workers (the "Class Members").

28. <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

5

Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

29. <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

30. Although the precise number of Class Members is unknown to Plaintiff, the facts on which the calculation of that number can be based is presently within the sole control of Defendants.

31. Upon information and belief, there are in excess of forty (40) Class Members.

32. <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting the individual members of the Class</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include, but are not limited to:

    a. whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

    b. whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premium pay for hours worked in excess of forty (40) hours per workweek;

    c. whether Defendants failed to provide Plaintiff and the Class Members with accurate wage statements;

    d. whether Defendants failed to provide Plaintiff and the Class Members with wage notices at the time of hire and/or on February 1 of each year thereafter;

    e. whether Defendants' policy of failing to pay workers properly was instituted willfully or with reckless disregard of the law; and

    f. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and

disbursements and attorneys' fees.

33. <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, is a laborer and a construction worker who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid overtime premium pay for hours worked over forty (40) in a given workweek; was not provided with proper wage statements; and was not provided with proper wage notices. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

34. <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own wages.

35. Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

36. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>. Defendants are sophisticated parties with substantial resources. Individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

37. The individual members of the class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Company**

38. At all relevant times, Defendant Wilcox Development Corp. has been in the construction, demolition, subdivision, developing, restoration, and maintenance of buildings business.

39. Upon information and belief, Wilcox Development Corp. is the construction and development entity which exclusively performs work in constructing and maintaining Stop & Stor's storage facilities.

40. At all relevant times, Defendant Stop & Stor has been in the general warehousing and storage facilities business. According to Stop & Stor's website:

> "Stop & Stor has been a vital part of New York City neighborhoods for decades. Stop & Stor is a family owned and operated business, established in 1980. We began as a small business and with the help of our loyal customers and outstanding customer service, we have grown into one of the largest and most respected storage companies in New York. …We plan on growing even more in the coming years by doing just what we have always done for the last quarter of a century: being there for our customers, our friends, and our community!".

(www.stopandstor. com/company-information/about-us/)

41. A 2014 post from Stop & Stor's Blog provides the following additional information regarding the Defendants:

> "More than two decades ago, two families in the real estate business sensed a need in our community. Twenty-five years later their business acumen and commitment to providing a necessary and affordable self-storage service has enable us to grow a business with over 70 employees, 15 locations, and all anchored on Staten Island through our corporate offices located in Staten Island. …As our company grew, principals of Stop & Stor – Ken Henick and his son Jeff, along with Morty Simon and his son, Neil, had a vision of the type of service they wanted to provide to their customers leading them to open up self-storage facilities that were drive through;

>       affordable; clean; and equipped with uniformed and professional
>       staff."

(*See* www.stopandstor.com/blog).

42. Defendants Simon and Henick were a constant presence at the Stop & Stor job sites where Plaintiff worked. Defendants Simon and Henick provided direction to Plaintiff's foreman regarding the work being performed, as well as personnel and wage payment decisions.

43. Upon information and belief, Wilcox Development and Stop & Stor share common ownership and management.

**Plaintiff's Work for Defendants**

44. Plaintiff Mejia was employed with Defendants as a laborer and construction worker from in or around 2013 to in or around June 2016 (the "Mejia Employment Period").

45. Throughout the Mejia Employment Period, Mejia and Wilcox Development's other employees solely performed construction, renovation, and maintenance work on Stop & Stor storage facilities.

46. Plaintiff Mejia was responsible for performing construction, painting, divisions, washing walls, pressure washing, installation, and repair of storage doors in various storage facilities owned by Defendants throughout the New York city area.

47. Throughout the Mejia Employment Period, Mejia typically worked six (6) days per week, from approximately 7:00 am to approximately 3:30 pm or later, for a total of approximately fifty-one (51) hours per week. When Defendants were in the last phase of the construction process and beginning with the painting of the premises, Plaintiff Mejia's scheduled hours increased, as he and other employees were required to stay four (4) or five (5) additional hours beyond their regular schedule. As such, during the periods Plaintiff Mejia has to performed painting and finishing tasks at a job site, his schedule was from approximately 7:00 am to approximately 8:00

9

pm, sometimes 9:00 pm, until they finish with the assignment, for a total of approximately seventy-two (72) to seventy-eight (78) hours per week.

48. From the beginning of the Mejia Employment Period to in or around the beginning of 2016, for a period of approximately two and one half (2 ½) years, Plaintiff Mejia was paid one hundred twenty dollars ($120.00) per day. During that period, Plaintiff Mejia received all of his wages in cash in an envelope, without a wage statement, from the hands of his supervisor and foreman, "Martin."

49. From in or around the beginning of 2016 to in or around the end of the Mejia Employment Period, Plaintiff Mejia was paid his wages by check from his supervisor "Martin." During this time period, Mejia was paid at a rate of eighteen dollars per hour ($18.00) for approximately forty (40) hours per week, despite the fact that he routinely worked more than 40 hours each week. Plaintiff received a pay stub with his bi-weekly payment, but this stub did not indicate the accurate number of hours Mejia had worked during that specific pay period.

50. Plaintiff and other employees complained to their supervisor about the missing hours on their checks, but did not receive any explanation as to why they were missing hours or any correction to their pay to account for the missing hours.

51. Throughout the Mejia Employment Period, regardless of the daily or hourly pay rate Mejia was receiving for his work, and regardless of the number of hours he worked, Defendants failed to pay him overtime premiums of one-and-one-half (1.5) times his regular hourly rate for hours worked in excess of forty (40) per week.

52. During the Mejia Employment Period, Defendants tracked the hours worked by Mejia and their other employees on a handwritten time sheet. Those records were kept by "Martin" his foreman, and therefore Plaintiff was not able to confirm the number of hours tracked by

Defendants on those time sheets.

53. Defendants have simultaneously employed other individuals like Plaintiff during the Class Period and Collective Action Period and continuing until today, to perform work as laborers, construction workers and demolition workers. As stated, the exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through appropriate discovery.

54. Like Plaintiff Mejia, Defendants' other laborers, construction workers and demolition workers were required to work in excess of forty (40) hours per week, yet Defendants failed to pay these other employees overtime compensation for hours worked in excess of forty (40) hours per week. This refusal to pay overtime compensation for hours worked in excess of forty (40) in a given week was a corporate policy of Defendants that applied to all of Defendants' laborers, and construction workers.

55. Defendants failed to provide Plaintiff Mejia and other similarly situated employees with wage notices at the time of hire or on February 1 of each year.

56. Defendants failed to provide Plaintiff Mejia and other similarly situated employees with proper wage statements.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

57. Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

58. By failing to pay Plaintiff and the Collective Action Members overtime at a rate not less than one and one-half (1.5) times their regular rate of pay for work performed in excess of

forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

59. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

60. Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Class Members)

61. Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

62. Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times their regular rate of pay for hours worked in excess of forty (40) per week, in violation of the NYLL and regulations promulgated thereunder.

63. Defendants' failure to pay overtime caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et al.

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS
### (Brought on Behalf of Plaintiff and the Class Members)

64.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

65.    Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

66.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS
### (Brought on Behalf of Plaintiff and the Class Members)

64. Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

65. Defendants have willfully failed to supply Plaintiff and the Class Members a proper wage statement as required by Article 6, § 195(3).

66. Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250) per employee for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2)

   and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  Designation of Named Plaintiff as representative of the Class Members and counsel of record as Class Counsel;

i.  Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.  Two hundred and fifty dollars ($250) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL § 195 occurred or continue to occur,

or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1)-d;

k.     Payment of unreimbursed business expenses under the New York Labor Law;

l.     An award of prejudgment and post-judgment interest;

m.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
        July 20, 2017

                                          Respectfully submitted,

                                          **PELTON GRAHAM LLC**

                                          By: _____
                                          Brent E. Pelton (BP 1055)
                                          pelton@peltongraham.com
                                          Taylor Graham (TG 9607)
                                          graham@peltongraham.com
                                          111 Broadway, Suite 1503
                                          New York, New York 10006
                                          Telephone: (212) 385-9700
                                          Facsimile: (212) 385-0800

                                          *Attorneys for Plaintiff, the putative Collective and Class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Wilcox Development y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Elvin Mejia_
Firma

_Elvin Mejia_
Nombre Escrito